UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY R. WALL,                          :
                                       :
      Plaintiff                        :
                                       :
      v.                               :     No. 3:09CV1066 (DJS)
                                       :
UNITED STATES DEPARTMENT               :
OF JUSTICE, ET AL.                     :
                                       :
      Defendants                       :


MEMORANDUM OF DECISION AND ORDER

The pro se Plaintiff, Gary R. Wall, brought this action
against the following the following named Defendants: Department
of Justice U.S. Attorneys Office, New Haven, Connecticut;
District Judge Janet C. Hall; Unknown District Law Clerks in the
Meaning of Bivens; Circuit Judge [now Supreme Court Justice]
Sonia Sotomayor; Unknown Circuit Law Clerks in the Meaning of
Bivens; and Congressman John Larson.  The caption of the
Complaint states that it is a "42 U.S.C. 1985(3) Civil Rights Act
Complaint for Obstruction and Usurpation of Due Process (5th
Amendment) Rights (Action in Equity)."  (Dkt. # 1, at 1.)  The
Complaint does not clearly identify the nature of the Plaintiff's
action.  In a subsequent submission to the Court, the Plaintiff
represented that "[t]his complaint is and can only be interpreted
as a Bivens Complaint and this Civil Rights pleader respectfully
request[s] the Court to do so."  (Dkt. # 12, at 3.)

The Plaintiff alleges that the U.S. Department of Justice
improperly denied him access to a federal grand jury, that the

defendant judges and law clerks conspired to violate, and did in fact violate, his "Due Process 5th Amendment Rights" through actions taken and rulings made in the previous federal lawsuits filed by the Plaintiff, and that Congressman Larson has failed to take action in response to information about corruption provided to Congressman Larson by the Plaintiff. The Defendants have moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Complaint in its entirety.[1] For the reasons that hereafter follow, the Defendants' motions to dismiss **(Dkt. # 8 and Dkt. # 17)** are **GRANTED**.

### PROCEDURAL BACKGROUND

This lawsuit is the latest in a series of court actions filed by the Plaintiff relating in one way or another to long-standing claims by the Plaintiff and another individual named William Cooksey ("Cooksey") against Construction & General Laborers' Union, Local 230 (the "Union"), which is affiliated with the Laborers' International Union of North America ("LIUNA") (collectively, "the Unions"). The factual history of these claims is set forth in detail in Wall v. Construction & General Laborers' Union, Local 230, 224 F.3d 168, 170-73 (2d Cir. 2000) and need not be repeated here. In short, the Plaintiff has

---

[1]The Defendant Larson has also moved to dismiss on the basis of insufficient service of process under Fed. R. Civ. P. 12(b)(5). The Court finds it unnecessary to address that claim.

consistently maintained that he and Cooksey were wrongly and illegally denied readmission to the Union, from which they had resigned after they had successfully pursued unfair labor practice charges against the Union before the National Labor Relations Board.  According to the Plaintiff, this denial adversely affected his and Cooksey's employment and pension rights.

Having been denied readmission to the Union, the Plaintiff and Cooksey initiated an action in federal court against the Union and its officers claiming violations of the federal Labor Management Reporting and Disclosure Act as well as Connecticut statutory and common law ("Wall I").  The district court (Janet C. Hall, Judge) initially granted summary judgment in favor of the defendants and the plaintiffs appealed to the United States Court of Appeals for the Second Circuit.  The Second Circuit affirmed the dismissal of the plaintiffs' state law claims, but reversed the dismissal of the plaintiffs' federal claim.  Wall v. Construction & General Laborers' Union, Local 230, 224 F.3d 168 (2d Cir. 2000).  On remand, the district court granted in part and denied in part the defendants' renewed motion for summary judgment.  The plaintiffs' remaining claim was tried before a jury, which returned a verdict for the defendants.  The district court subsequently denied the plaintiffs' motion for a new trial and motion to reconsider the denial of the motion for a new

trial.  The Second Circuit later affirmed the district court's

decision to deny the motion for reconsideration and declined to

consider the plaintiffs' untimely challenge to the underlying

verdict and judgment.  <u>Wall v. Construction & General Laborers'</u>

<u>Union, Local 230</u>, No. 06-1264-cv, 2009 U.S. App. LEXIS 1905, at

*2-*3 (2d Cir. Feb. 2, 2009).

In 1998, the Plaintiff, along with Cooksey and a third

individual named Stephen Manos ("Manos"), filed a complaint

pursuant to the Racketeer Influenced and Corrupt Organizations

Act ("RICO") alleging that the defendants, who were the Unions

and various officials of the Unions, had violated the civil

remedy provisions of RICO.  The plaintiffs in that action

contended that the defendants had deprived them of the rights to

union membership, employment, due process, and the right to vote

in union affairs, as well as entitlement to their pensions.  The

district court (Janet C. Hall, Judge) concluded that the

plaintiffs had failed to establish the existence of two predicate

acts required to demonstrate a RICO violation and, for that

reason, dismissed the Second Amended Complaint[2].  On appeal, the

Second Circuit affirmed the judgment of the district court.  <u>Wall</u>

<u>v. Roman</u>, 18 Fed. Appx. 41 (2d Cir. 2001).

In 2004, the Plaintiff, along with Cooksey and Manos, filed

---

[2]The district court had previously dismissed the original complaint and
an amended complaint.

4

another RICO complaint, naming the Unions, various officials and agents of LIUNA, the Connecticut Laborers' Pension Fund (the "Pension Fund"), and the director of the Pension Fund as defendants. The plaintiffs in that action alleged that the defendants had violated their constitutional rights and RICO by failing to fully fund or credit their pensions and by denying them reinstatement to membership in the Union. The district court (Warren W. Eginton, Judge) concluded that the plaintiffs' claims were barred on the basis of collateral estoppel and granted the defendants' motion to dismiss. The Second Circuit affirmed the judgment of the district court. Wall v. Laborers' International Union of North America, Local 230, 276 Fed. Appx. 68 (2d Cir. 2008). In its decision, the Second Circuit stated that "[w]e have further reviewed the plaintiffs' claims of corruption and bias, and find them to be without merit. We have also reviewed the plaintiffs' motion for the disqualification of Chief Judge Jacobs as a panel member for this appeal, and deny it as moot, because the Chief Judge is not a member of this panel." Id. at 70.

On March 3, 2009, the Plaintiff filed an action styled as a "5 U.S.C. 552(a)(4)(B) Fee Waiver Complaint," relating to a Freedom of Information request for information concerning an "Operating Agreement" between the Department of Justice and LIUNA. See Wall v. Executive Office for United States Attorneys,

5

Case No. 09-cv-00344 (JCH). In that action, the court (Janet C. Hall, Judge) denied what was characterized as a Motion for Recusal that was based on the fact that the Plaintiff had named Judge Hall as a defendant in the case that is before this Court. The Second Circuit dismissed the Plaintiff's appeal from the denial of the recusal motion for the reason that it lacked jurisdiction over the appeal because a final order had not been issued by the district court. <u>Wall v. Executive Office for United States Attorneys</u>, No. 10-2943-cv, slip op. (Sept. 3, 2010). The district court subsequently granted the defendants' motion for summary judgment and judgment entered in favor of the defendants on November 17, 2010.

## FACTS

The following facts are alleged in the Complaint. In early 1995, the U.S. Justice Department and LIUNA entered into an agreement known as the "Operating Agreement." According to the Plaintiff, this agreement was wrongly portrayed to Congress as a "self-policing action in response to a 212 page draft RICO complaint." (Dkt. #1, at 2-3.) Since December 2004, the Plaintiff has requested that the U.S. Attorney's Office in Connecticut provide him with access to a grand jury in order for the Plaintiff to expose the Operating Agreement for what it actually is, i.e., "a conspiracy to defraud the Lawful Functions of the United States (18 U.S.C. 371(a)(b)), by and through the

corrupt procurement and administration of the Racketeering Influence and Corrupt Organization Act. . . ." (Id. at 3.) According to the Plaintiff various crimes have been committed "[b]y reason of said 'Operating Agreement,'" and the denial of grand jury access by the Connecticut U.S. Attorney's Office has facilitated this criminal activity. (Id.)

The Plaintiff's initial federal complaint (Wall I), was transferred from the Honorable Janet B. Arterton, who sits in New Haven, Connecticut, to the Honorable Janet C. Hall, who sits in Bridgeport, Connecticut, in October 1997. According to the Plaintiff, this transfer was ordered in furtherance of a conspiracy involving federal judges[3] and law clerks to deprive him of his "Due Process 5th Amendment Rights" "as part of a scheme to hide the crimes of the 'Operating Agreement.'" (Id. at 7, 9.)

The Plaintiff alleges that in presiding over Wall I, Judge Hall "took no action against the defendants when she had full knowledge that the defendants stole co-plaintiff Cooksey's psychiatric records from Connecticut Laborer's Pension Fund. . . and then read them out to the membership at a membership meeting," and also took no action "when it was proven that the

---

[3]The Complaint includes a number of allegations concerning retired Senior U.S. District Judge Alan H. Nevas and further states that "[t]his plaintiff has just been made aware when service of a Notice to Judge Nevas in the Bridgeport division was made that Judge Nevas has just retired leaving me no cause of action in equity because Judge Nevas is no longer a Federal Judge." (Dkt. #1, at 6.)

defendants [sic] lawyer printed after the fact fraudulent subpoenas." (Id. at 7.) He further alleges that Judge Hall, apparently through certain unknown law clerks, "criminally post-dated an Amended Complaint by dating it 11 days late not knowing the plaintiff had a copy of the correct stamp day and time," "stopped the facts that were exposed in discovery in the LMRDA [Labor Management Reporting and Disclosure Act] case from 'Public Visibility' by pleading a fact fraud case for the defendants (Sua Sponti) [sic] that they did not even plead," and "knowingly aid[ed] and abet[ted] collusion perjury committed by G.E.B. Attorney Robert D. Luskin. . . ." (Id. at 7-8.)

The Complaint asserts that "[t]he reason Circuit Judge Sotomayor is a defendant is the same reason District Judge Hall was named as a defendant, both judges were used multiple times (pattern) to obstruct and usurp Rights exposing the pattern of crimes as obvious acts of obstruction of Due Process Rights." (Id. at 9.) The Plaintiff alleges that he filed a Writ of Mandamus with the Second Circuit in September 2002 and that "Circuit Judge Sotomayor by Summary Order. . . answered said Writ November 17, 2003[4] by committing flagrant fact fraud avoiding the

---

[4]The Court notes that on November 17, 2003, the Second Circuit issued a Summary Order affirming Judge Hall's decisions in Wall I denying the plaintiffs' motion for a preliminary injunction and their motion to consolidate a hearing on the preliminary injunction with a trial on the merits. See Wall v. Construction & General Laborers' Union, 80 Fed.Appx. 714 (2d Cir. 2003). The panel that issued that Summary Order was composed of the Honorable Richard J. Cardamone, the Honorable Sonia Sotomayor, and the Honorable Robert A. Katzmann, Circuit Judges. Id.

substantive questions in the write [sic] in order to use a
'standard of review' that would hide the seriousness of the
writ." (Id.)

The Plaintiff further alleges that in December 2003 he
submitted a Petition for Rehearing to the Second Circuit in which
he posed certain questions to the "Sotomayor Panel, " e.g., "Did
the Sotomayor Panel by and through their Summary Order 03-6091
filed Second Circuit November 17, 2003, continue a systematic
plan to hide documented Judicial Fraud and Extra Judicial Acts of
Misconduct committed by District Judge Hall. . . .," and that he
did not receive a response to his questions.  (Id. at 9-10.)  The
Plaintiff goes on to allege that during an oral argument before
the Second Circuit in November 2003, Judge Sotomayor interrupted
him "in order to take away from my five minutes of time for oral
argument, and in so doing, silence my words."  (Id. at 10-11.)
The Plaintiff also references two other documents he submitted to
the Second Circuit in which he stated that "Circuit Judge
Sotomayor has been used prior on an obstruction panel [in] Case
No. 03-6091," and that "Circuit Judge Sotomayor has already
committed multiple fact fraud Rulings that abetted Circuit Judge
Walker and Circuit Judge Jacobs extra judicial documented acts of
fraud in addition to fact fraud decision concerning District
Judge Hall."  (Id. at 11.)   He then alleges that "there was no
response by Circuit Judge Sotomayor to these serious averments

and multiple other pleadings in the Second Circuit that exposed her usurpation of Rights and involvement in the D.O.J./Judicial Branch corruption (no accountability, no Rule of Law)."  (<u>Id.</u> at 11-12.)

With regard to Congressman Larson, the Plaintiff alleges that "[h]e is a defendant by reason of the fact that presented to Congressman Larson was indisputable evidence that the protections of 28 U.S.C. 351 are being corruptly procured and used by the Judicial Branch under the Judicial Branch's self-policing status pursuant to 351 and 455. . . ."  (<u>Id.</u> at 12.)  The Plaintiff further alleges that he has asked Congressman Larson "to draft a letter to a Congressional Oversight Committee requesting an investigation of this Separation of Power Corruption Acts committed in his district."  (<u>Id.</u> at 12-13.)

## DISCUSSION

**Motion to Dismiss Standard**

All of the Defendants have moved to dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. . . . A plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."
Makarova v. United States, 201 F.3d 110, 113 (2d. Cir. 2000).

"To survive a motion to dismiss [under Fed. R. Civ. P.
12(b)(6)], a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" Ashcroft v. Iqbal,--U.S.--, 129 S.Ct. 1937, 1949
(2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007)). "'A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged.'" Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d
Cir. 2009)(quoting Iqbal, 129 S.Ct. at 1949).

"In ruling on a motion to dismiss, a court must construe in
plaintiff's favor any well-pleaded factual allegations in the
complaint." Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44
(2d Cir. 1991). "Even in a *pro se* case, however, . . . that
tenet is inapplicable to legal conclusions, and threadbare
recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." Chavis v. Chappius, 618
F.3d 162, 170 (2d Cir. 2010)(internal quotation marks omitted).


**Bivens action**

As previously noted, the Plaintiff has represented that
"[t]his complaint is and can only be interpreted as a Bivens

11

Complaint and this Civil Rights pleader respectfully request[s] the Court to do so."  (Dkt. # 12, at 3.)   The Plaintiff has further represented that he is pursuing his "claims against the 42 USC 1985(3) defendants in their personal and official capacity. . . ."  (Id. at 2.)  As to all Defendants, the relief requested is limited to various forms of what is described as "Equitable Relief," i.e., court-ordered access to a federal grand jury, a "Judicial or Congressional investigation of Separation of Powers corruption," and a court order directing Congressman Larson "to draft a letter to a Congressional Oversight Committee requesting an investigation of this Separation of Power Corruption Acts committed in his district."  (Dkt. # 1, at 5, 12-13)  On the basis of the Plaintiff's representations, the Court will consider the Complaint as a Bivens action brought against the Defendants in both their official and individual capacities, seeking only equitable relief.

In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001). "Bivens' core purpose [is] deterring individual officers from engaging in unconstitutional wrongdoing." Id. at 74.  The Bivens remedy serves a deterrent purpose by exposing federal officials

to personal liability for money damages. "Because the Bivens remedy is recoverable against individuals, it is a more effective deterrent than [a] remedy against the United States. It is almost axiomatic that the threat of damages has a deterrent effect." Carlson v. Green, 446 U.S. 14, 21 (1980). Thus a Bivens action "must be brought against the federal officers involved in their individual capacities," Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994), and actions against federal agencies are not cognizable under Bivens. See F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994).

There are two fundamental hurdles the Plaintiff simply cannot overcome in pursuing his Bivens action. First, equitable relief, which is the only relief sought in the Complaint, cannot be obtained against officials in their individual capacities. See Frank v. Relin, 1 F.3d 1317, 1327 (2d Cir. 1993) ("equitable relief could be obtained against [a defendant] only in his official, not his individual, capacity"); see also Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989)(equitable relief "can be obtained only from the defendants in their official capacities, not as private individuals.").

Even more problematic for the Plaintiff is the fact that he seeks only equitable relief, not money damages, and a Bivens action is "by definition a claim for money damages. . . ." Polanco v. United States DEA, 158 F.3d 647, 652 (2d Cir.

13

1998)(parentheses omitted).  Clearly the Complaint fails to state a claim as a <u>Bivens</u> action.  As to the Defendants in their official capacities and the U.S. Department of Justice, it is also barred by the doctrine of sovereign immunity, since it is, in effect, a suit against the United States.  <u>See Robinson</u>, 21 F.3d at 510.  "Because the relief sought by [the Plaintiff] is unavailable as a matter of law, the case must be dismissed." <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 429 (1988).

**Mandamus**

The Complaint also indicates that the Plaintiff is seeking a mandamus: "This complaint's jurisdiction is also under 28 U.S.C. 1361.  Said jurisdictional grant is an 'ACTION IN THE NATURE OF MANDAMUS' which authorizes a suit to compel a federal officer to perform the officer's duty."  (Dkt. # 1, at 13.)

"[T]he mandamus statute relied upon by [the Plaintiff], 28 U.S.C. § 1361, does not apply to courts or to court clerks performing judicial functions."  <u>Trackwell v. U.S. Government</u>, 472 F.3d 1242, 1243 (10th Cir. 2007).  Neither does that statute apply to members of Congress.  <u>See Liberation News Service v. Eastland</u>, 426 F.2d 1379 (2d Cir. 1970)  Consequently, this Court lacks jurisdiction over a § 1361 action against federal judges, their law clerks, or a member of Congress.  <u>See Trackwell</u>, 472 F.3d at 1247.

"[M]andamus is an extraordinary remedy, intended to aid only

those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" Escaler v. United States Citizenship & Immigration Services, 582 F. 3d 288, 292 (2d Cir. 2009) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)). "Plaintiff seeks an order compelling a grand jury investigation, but the United States Attorney General has absolute discretion in deciding whether to investigate claims for possible criminal or civil prosecution. . . . Defendants' motion to dismiss the claim for a writ of mandamus therefore is granted." Hantzis v. Grantland, No. 08-2190 (CKK), 2009 WL 3490757, at *2 (D.D.C. Oct. 30, 2009). The reasoning expressed in Hantzis is equally applicable to the Plaintiff's mandamus claim as it relates to the U.S. Department of Justice.  That claim must also be dismissed.

**Whether the Plaintiff Should be Granted Leave to Amend the Complaint**

Having determined that the Plaintiff's Complaint must be dismissed, the Court must now decide whether to dismiss without prejudice, thereby allowing the Plaintiff to amend his Complaint, or with prejudice, whereby the Plaintiff would not be permitted to amend his Complaint.  A pro se complaint "should not be dismissed without granting leave to amend at least once when. . . a [liberal] reading [of the complaint] gives *any* indication that a valid claim might be stated."  Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999)(internal quotation marks omitted).  This approach is consistent with the directive that "[a] *pro se*

complaint is to be read liberally." <u>Branum v. Clark</u>, 927 F.2d
698, 705 (2d Cir. 1991). At the same time, however, a court may
deny an opportunity to amend "when amendment would be futile."
<u>Fulton v. Goord</u>, 591 F.3d 37, 45 (2d Cir. 2009)(internal
quotation marks omitted). These principles guide the Court's
consideration of whether the Complaint gives any indication that
a valid claim might be stated.

**Individual Capacity Suit Seeking Money Damages**

Since the Plaintiff has expressed his intention to pursue a
<u>Bivens</u> action, and a <u>Bivens</u> action can only be pursued as a claim
for money damages against federal officials in their individual
capacities, the question arises whether the Plaintiff might state
a valid claim by seeking money damages against the named
defendants in their individual capacities. The short answer to
that question is that the Plaintiff cannot state a valid <u>Bivens</u>
claim against those individuals.

The individual Defendants are judges, law clerks, and a
Congressman. An action for money damages against the judges and
the law clerks would be barred by judicial immunity. "Judges are
granted absolute immunity for acts taken pursuant to their
judicial power and authority. . . ." <u>Oliva v. Heller</u>, 839 F.2d
37, 39 (2d Cir. 1988). "[F]or purposes of absolute judicial
immunity, judges and their law clerks are as one." <u>Id.</u> at 40
(internal quotation marks omitted). Members of Congress are also

16

granted absolute immunity under the Speech or Debate Clause of the United States Constitution, Art. I, § 6, cl. 1, with respect to claims based on "conduct. . . within the sphere of legitimate legislative activity." Doe v. McMillan, 412 U.S. 306, 312 (1973)(internal quotation marks omitted).

While the Plaintiff did not name any individual member of the U.S. Department of Justice as a defendant, the Complaint does make a reference to two such individuals. (Dkt. # 1, at 3.) It would, however, be of no avail to the Plaintiff to seek to name these two individuals as defendants in a Bivens action. The Plaintiff's complaint as to the U.S. Department of Justice is that a grand jury was not convened at his request. (Id. at 3-5.) It is well-established that prosecutors are accorded absolute immunity as to "all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution. . . [and] activities in deciding not to do so. . . ." Barrett v. United States, 798 F.2d 565, 571-72 (2d Cir. 1986) (citations omitted); see also Marczeski v. Handy, 213 F. Supp. 2d 135, 141 (D.Conn. 2002) ("claims based on an alleged failure to investigate come within the absolute immunity afforded by Imbler [v. Pachtman, 424 U.S. 409 (1976)].").  A decision to convene or not convene a grand jury "can fairly be characterized as closely associated

with the conduct of litigation or potential litigation" and is therefore entitled to absolute immunity.

"It is settled law that the United States Attorney has absolute, unreviewable discretion with respect to whether or not to prosecute a particular case. This prosecutorial discretion is rooted in the constitutional command that the power to enforce the laws be vested in the executive branch, U.S. Const. Art III, § 3, so that the unreviewability of this discretion by the judiciary is an incident of the separation of powers." In Re Hartford Textile Corp., No. 80 CIV. 3558 (MP), 1980 U.S. Dist. LEXIS 12551, at *3 (S.D.N.Y. July 28, 1980).

The Court concludes that the Complaint cannot be amended to state a valid Bivens claim.

**Official Capacity Suit Seeking Equitable Relief**

Because the only relief requested in the Complaint is equitable relief, the Court will consider whether the Plaintiff might be able to amend his Complaint to state a valid claim seeking equitable relief against the Defendants in their official capacities. "There is no such animal as a Bivens suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001).

Since an official capacity suit would effectively be a claim against the United States, such a suit would implicate the doctrine of sovereign immunity. "Absent an 'unequivocally expressed' statutory waiver, the United States, its agencies, and its employees (when functioning in their official capacities) are immune from suit based on the principle of sovereign immunity." County of Suffolk v. Sebelius, 605 F.3d 135, 140 (2d Cir. 2010).

Pursuant to 5 U.S.C. § 702 ("§ 702"), "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." That statute "provides a limited waiver of sovereign immunity in specific situations. . . [involving] *agency* actions. . . ." Infante v. DEA, 938 F. Supp. 1149, 1153-54 (E.D.N.Y. 1996)(emphasis added). For the purposes of § 702, the term "'agency'. . . does not include the Congress [or] the courts of the United States. . . ." 5 U.S.C. § 701 ("§ 701"). Consequently, § 702 does not constitute a waiver of sovereign immunity as to claims against federal judges (or their law clerks) or against members of Congress. Since "[s]overeign immunity is jurisdictional in nature," F.D.I.C. v. Meyer, 510

U.S. 471, 475 (1994), this Court would lack subject matter jurisdiction over an amended Complaint seeking equitable relief against the federal judges, their law clerks, or Congressman Larson.

Although the U.S. Department of Justice may be considered an "agency" for purposes of § 702, see Miller v. Mehltretter, 478 F. Supp. 2d 415 (W.D.N.Y. 2007), that statute "does not waive agency immunity where . . . the contested agency action is one committed to discretion. . . ." Infante, 938 F. Supp. at 1154; see § 701 (a)(2)("This chapter applies, according to the provisions thereof, except to the extent that. . . agency action is committed to agency discretion by law."). The claim which the Plaintiff wishes to pursue against the U.S. Department of Justice, that a federal grand jury was not convened at his request, clearly is an action committed to agency discretion by law.

"Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." United States v. Batchelder, 442 U.S. 114, 124 (1979); see also Heckler v. Chaney, 470 U.S. 821, 832 (1985) ("[T]he decision of a prosecutor in the Executive Branch not to indict. . . has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to 'take Care that the Laws be

20

faithfully executed.'  U.S. Const., Art. II, § 3.").   Since the

action challenged by the Plaintiff is one committed to agency

discretion by law, there is no waiver of sovereign immunity under

§ 702 as to that action and the Court would lack subject matter

jurisdiction over such a claim.  This result affirms the

principle that in exercising their official discretion, members

of the U.S. Department of Justice are "not subject to control by

the judiciary at the instance of private persons."  <u>Dacey v.

Dorsey</u>, 568 F.2d 275, 277 (2d Cir. 1978).

**CONCLUSION**

For the foregoing reasons, the Defendants' motions to

dismiss **(Dkt. # 8 and Dkt. # 17)** are **GRANTED with prejudice**,

meaning that the Plaintiff will not be permitted to amend his

Complaint.  After careful review and consideration, the Court

concludes that this the Complaint does not give any indication

that a valid claim might be stated.  Consequently, amendment of

the Complaint would be futile. The Clerk of the Court is directed

to close this case.

**SO ORDERED** this 29th day of November, 2010.

_____/s/ DJS_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**